UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | |
|---|---|
| NORMA BIBIANO as next friend to minor child, A.R., and administrator for the Estate of JUAN CARLOS RAMIREZ BIBIANO,<br><br>    Plaintiffs,<br><br>v.<br><br>JOSHUA GARRETT,<br>MICHAEL PAULK,<br>RONNEISHA MOORE,<br>ARLENE HUNT,<br>VERONICA STEWART, and<br>ANDREW McFARLANE,<br><br>    Defendants. | Case no.: 3:25-cv-013 |

## COMPLAINT

On July 20, 2023, Juan Carlos Ramirez Bibiano died from heat exposure while incarcerated in Telfair State Prison. Without shade or adequate water, Mr. Ramirez spent nearly four hours in an outdoor recreation cage while the heat index climbed to 105 degrees. Defendants Garrett and Paulk are corrections officers who took Mr. Ramirez out to the yard that day. They repeatedly ignored his requests for medical help, as well as the repeated requests of the inmates to take Mr. Ramirez back inside. Defendant Ronneisha Moore was a Sergeant at Telfair and along with

Page 1 of 15

Defendant Hunt, who is a Unit Manager, she supervised Defendants Garrett and Paulk. Both Moore and Hunt learned from Defendant Paulk that Mr. Ramirez requested to see medical because of the heat. Defendant Hunt instructed Defendant Paulk to leave Mr. Ramirez outside on the yard. Defendant Moore did not intervene after Defendant Hunt issued that order. The Defendants' deliberate indifference to Mr. Ramirez violated his rights under the Eighth and Fourteenth Amendments of the U.S. Constitution.

Plaintiff further alleges that shortly before Mr. Ramirez was placed outside in the heat, Defendant Stewart, then the Deputy Warden of Security, had emptied a can of oleoresin capsicum spray into Mr. Ramirez's cell as punishment for Mr. Ramirez's failure to have his cell "inspection ready." Defendant McFarlane, Telfair State Prison's warden, knew and approved of that use of force, which was consistent with his policy and practice to punish inmates for minor infractions using chemical weapons in unventilated, closed spaces. Defendants Stewart and McFarlane violated Mr. Ramirez's right to be free of excessive force under the Eighth and Fourteenth Amendments. All Defendants are sued in their personal capacities.

## Jurisdiction and Venue

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

2.      Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of Mr. Ramirez's civil rights under the Eighth and Fourteenth Amendments to the U.S. Constitution.

3.      Venue is proper in this district under 28 U.S.C. § 1391(b), this being the district where the claims arose.

## Parties

4.      Norma Bibiano is the mother of Juan Carlos Ramirez Bibiano and grandmother of Mr. Ramirez's minor son, A.R. On June 4, 2024, Ms. Bibiano was appointed as the administrator of the Estate of Juan Carlos Ramirez Bibiano by the Probate Court of DeKalb County.

5.      Defendant Joshua Garrett resides in the state of Georgia and is employed as a Corrections Officer at Telfair State Prison. At all times material to the allegations herein, Defendant Garrett was acting under color of state law. He is sued in his individual capacity.

6.      Defendant Michael Paulk resides in Georgia and, at all times material to the allegations herein, was employed as a Corrections Officer at Telfair State Prison. At all times material to the allegations herein, Defendant Paulk was acting under color of state law. He is sued in his individual capacity.

7.      Defendant Ronneisha Moore resides in Georgia and, at all times material to the allegations herein, was employed as a Sergeant at Telfair State

Prison. At all times material to the allegations herein, Defendant Moore was acting under color of state law. She is sued in her individual capacity.

8. Defendant Arlene Hunt resides in Georgia and is employed as a Unit Manager at Telfair State Prison. At all times material to the allegations herein, Defendant Hunt was acting under color of state law. She is sued in her individual capacity.

9. Defendant Veronica Stewart resides in Georgia and, at all times material to the allegations herein, was employed as the Deputy Warden of Security at Telfair State Prison. At all times material to the allegations herein, Defendant Stewart was acting under color of state law. She is sued in her individual capacity.

10. Defendant Andrew McFarlane resides in Georgia and is employed as the Warden at Telfair State Prison. At all times material to the allegations herein, Defendant McFarlane was acting under color of state law. He is sued in his individual capacity.

## Factual Allegations

*Mr. Ramirez's return to Telfair*

11. On July 19, 2023, Mr. Ramirez returned to Telfair State Prison after being treated at Augusta State Medical Prison for suicidal ideations.

12. Upon his return to Telfair, Mr. Ramirez was assigned to a cell in Dorm F1.

13. The cells in F1 were reserved for people in administrative segregation, known as the Tier Program within the prison system. The program functioned like solitary confinement, restricting inmates' contact with other inmates and severely limiting their time outside of their cells.

*Cell Inspections and Excessive Force*

14. At least twice a week, the Telfair staff conducted cell inspections in Dorm F1.

15. The inspections were conducted in the morning. Inmates were expected to be up, out of bed, and standing against the wall opposite their cell door.

16. During the inspection, officers would look into the cell to see if it was "inspection ready."

17. "Inspection ready" meant that the bed was made, the cell was tidy, the lights were on, and that there was nothing obstructing the officer's view into the cell.

18. If the inmate was not up against the wall or if his cell was not "inspection ready," officers would punish the inmate.

19. The punishment favored by officers was oleoresin capsicum (OC) spray.

20. Officers carried a black aerosol can of OC Spray with the image of a bear on it.

21. Upon seeing an infraction, officers would open the cell door's flap and proceed to spray the entire contents of an OC can into the cell.

22. The cells in Dorm F1 were closed off and had very little air circulation.

23. After spraying an inmate, officers did not provide medical attention or allow the inmate to rinse the spray off.

24. This practice was widespread within the prison. It was known to, and approved by, Defendant McFarlane, Telfair's Warden, who was often present for cell inspections.

25. The morning of July 20, 2023, was Mr. Ramirez's first morning in Dorm F1.

26. Defendants Stewart and McFarlane came to the dorm that morning with several other officers to conduct cell inspections.

27. Mr. Ramirez was not ready for inspection that morning.

28. As punishment for not being prepared for cell inspection, Defendant Stewart emptied a can of OC spray into Mr. Ramirez's cell.

29. Defendant McFarlane stood by while Mr. Ramirez was sprayed with OC spray.

30. The use of OC spray to punish inmates for inspection infractions was widespread and approved of by Defendant McFarlane.

*Medications*

31. While at Augusta State Medical Prison, Mr. Ramirez was prescribed Zyprexa and Cymbalta.

32. He received Zyprexa in the evenings and Cymbalta in the mornings.

33. On July 19, 2023, at around 6:00 p.m., Mr. Ramirez received his dose of Zyprexa from a nurse working at Telfair State Prison.

34. On July 20, 2023, at around 7:00 a.m., Mr. Ramirez received his dose of Cymbalta from a nurse during pill call.

35. Zyprexa increases patients' risk of hyperthermia because it interferes with the body's ability to regulate its internal temperature.

36. Cymbalta is known to increase patients' body temperature.

37. The risk of hyperthermia from these medications is significant and the Georgia Department of Corrections requires inmates to sign an acknowledgment and creates special procedures to protect inmates, like Mr. Ramirez, who are on lockdown from overheating while in the cell.

38. The procedures and acknowledgment are part of the Georgia Department of Corrections' Standard Operating Procedures and known to its guards and supervising staff.

*The Yard*

39. The Georgia Department of Corrections standard operating procedures require that inmates in the Tier program be offered five hours per week of exercise outside of their cells.

40. At Telfair, inmates in the Tier program rarely had regular outside exercise time.

41. When officers would permit inmates housed in the Tier program to go onto the yard, it was usually for four or five hours at a time.

42. On the yard, inmates were placed in recreation pens, measuring 12 feet by 8 ½ feet.

43. Defendant Paulk brought Mr. Ramirez from F1 to the yard at around 10:20 a.m. on July 20, 2023.

44. Mr. Ramirez was one of the first inmates to get to the yard that morning.

45. The pen where Defendant Paulk placed Mr. Ramirez had a concrete floor and was enclosed by chain-link fence. It offered no shade from the sun.

46. When entering or exiting the yard, inmates and officers had to pass by Mr. Ramirez's cell.

47. After about 20 minutes outside, Mr. Ramirez began to feel overheated.

48. Mr. Ramirez asked Defendants Paulk and Garrett to take him off the yard multiple times.

49. Mr. Ramirez asked Defendants Paulk and Garrett to take him to medical because his medications were causing him to feel sick.

50. Mr. Ramirez told Defendants Paulk and Garrett that he was having trouble breathing, that he was dehydrated, and that he was too hot.

51. Mr. Ramirez's skin reddened, and he was sweating profusely.

52. At one point, Mr. Ramirez was crying and saying he felt like he was going to die.

53. Then, Mr. Ramirez stopped talking at all and could only moan.

54. Mr. Ramirez stripped naked and laid, unresponsive, on the concrete.

55. Mr. Ramirez's breathing became shallow and labored.

56. Defendants Paulk and/or Garrett threatened to use OC spray if Mr. Ramirez didn't put his jumpsuit back on.

57. Mr. Ramirez remained unresponsive as Defendants Paulk and Garrett made these threats.

58. Seeing Mr. Ramirez's condition deteriorate, other inmates begged Defendants Paulk and Garrett to take Mr. Ramirez off the yard and get him to medical.

59. Both Defendants Paulk and Garrett went out onto the yard after Mr. Ramirez began feeling ill and saw Mr. Ramirez as his health deteriorated.

60. Defendant Garrett went out to the yard five times between 11:00 a.m. and 2:40 p.m.

61. Defendant Paulk went out three times between 11:50 and 12:15.

62. During that time, Defendant Paulk went to talk with his supervisors, Defendants Moore and Hunt.

63. When Paulk went to talk with Defendants Moore and Hunt, Defendant Paulk knew that Mr. Ramirez had come from Augusta State Medical Prison and was being treated for his mental health.

64. Defendant Paulk had also been told by Mr. Ramirez that his medications were causing him to feel sick, that he was having trouble breathing, that he was dehydrated, and that he was too hot.

65. Defendant Paulk saw that Mr. Ramirez's skin had turned red, that he was sweating profusely, that he had become unresponsive, and that Mr. Ramirez had stripped naked.

66. Defendant Paulk had a duty to communicate all relevant facts to his supervisors.

67. Upon information and belief, Defendant Paulk acted in accordance with that duty and relayed information concerning Mr. Ramirez's medical condition to Defendants Moore and Hunt.

68. Defendant Hunt told Defendant Paulk to leave Mr. Ramirez on the yard.

69. After hearing Defendant Hunt's statement to Defendant Paulk, Defendant Moore did not intervene to make sure that Mr. Ramirez had access to necessary medical care.

70. Defendant Paulk went back onto the yard.

71. When inmates asked Defendant Paulk to help Mr. Ramirez, Defendant Paulk responded, "Fuck him. If he dies, he dies."

72. Defendant Paulk told another inmate that Mr. Ramirez should not have come outside if he did not want to be in the heat.

73. Despite the many requests to help Mr. Ramirez, Defendant Paulk left and went on break around 12:15 and did not return to the yard for hours.

74. Officer Garrett continued to come and go from the yard, but took no steps to assist Mr. Ramirez.

75. During his time outside in the recreation pen, Mr. Ramirez became hyperthermic, with his body's temperature reaching over 107 degrees.

76. Finally, around 2:40 p.m., Officer Castro came out to the yard and saw that Mr. Ramirez was unresponsive.

77. Officer Castro brought Defendant Hunt out to the yard.

78. Defendant Hunt told inmates that Mr. Ramirez was fine.

79. Defendants Paulk and/or Garrett again threatened to use OC spray if Mr. Ramirez did not put his clothes on.

80. Defendant Hunt ordered the other inmates to be taken off the yard before calling medical around 3:00 p.m.

81. Defendant Hunt had the officers handcuff Mr. Ramirez until medical staff asked her to remove the cuffs.

82. When the medical personnel arrived, they noticed that Mr. Ramirez had vomited and defecated on himself.

83. When medical personnel came out, they observed that Mr. Ramirez was hot to the touch and that he had turned blue in color.

84. Mr. Ramirez's breathing was erratic, and his pulse was weak and irregular.

85. Another nurse noted that Mr. Ramirez had a yellowish liquid coming from his nose and mouth.

86. After prison medical staff failed to stabilize Mr. Ramirez, prison staff finally contacted EMS around 3:21 p.m.

87. EMS arrived fifteen minutes later and took Mr. Ramirez to the Dodge County Hospital, where he was later pronounced dead.

## Count I

88. This Count is alleged by all Plaintiffs against Defendants Paulk and Garrett and incorporates paragraphs 31-87.

89. Defendants Garrett and Paulk's deliberate indifference to Mr. Ramirez's condition violated Mr. Ramirez's rights under the Eighth and Fourteenth Amendments, inflicting upon him unnecessary pain and suffering and ultimately causing Mr. Ramirez's death.

## Count II

90. This Count is alleged by all Plaintiffs against Defendant Hunt and Defendant Moore and incorporates paragraphs 31-87.

91. Defendants Hunt and Moore were deliberately indifferent when they told Defendant Paulk to leave Mr. Ramirez on the yard.

92. Defendants Hunt and Moore's deliberate indifference violated Mr. Ramirez's rights under the Eighth and Fourteenth Amendments, inflicting upon him unnecessary pain and suffering and ultimately causing Mr. Ramirez's death.

### Count III

93.    This count is alleged by Plaintiff Norma Bibiano as administrator of Mr. Ramirez's estate. It is against Defendant Stewart and incorporates paragraphs 14-30.

94.    Defendant Stewart's use of OC spray to punish Mr. Ramirez for not being inspection ready was an excessive use force in violation of the Eighth and Fourteenth Amendments of the United States Constitution.

### Count IV

95.    This count is alleged by Plaintiff Norma Bibiano as administrator of Mr. Ramirez's estate. It is against Defendant McFarlane and incorporates paragraphs 14-30.

96.    Defendant McFarlane's policy and widespread practice of permitting officers to use OC spray to punish minor violations was the moving force behind Defendant Stewart's use of excessive force.

97.    Defendant McFarlane's policy and practice violated Mr. Ramirez's rights under the Eighth and Fourteenth Amendments of the United States Constitution.

### Prayer for Relief

Plaintiffs respectfully request that the Court enter judgment in his favor and against Defendants on all counts and award against each Defendant:

    A. compensatory damages;

    B. punitive damages;

    C. attorney's fees under 42 U.S.C. § 1988;

    D. court costs; and

    E. all other relief at law or in equity to which Plaintiffs are legally entitled.

Jury Demand

Plaintiffs demand a trial by jury pursuant to Rule 38(b) on all issues so triable.

Dated: February 13, 2025

/s/Jeff Filipovits
Jeff Filipovits
Georgia Bar No. 825553
jeff@civil-rights.law

SPEARS & FILIPOVITS, LLC
315 W. Ponce de Leon Ave., Ste. 865
Decatur, GA 30030
404-905-2225

/s/Wingo Smith
Wingo F. Smith
Georgia Bar No. 147896
wingo@civil-rights.law

The Chadha Jimenez Law Firm
4480 South Cobb Drive
Suite H 181
Smyrna, GA 30080
404-941-4039

/s/Surinder K. Chadha Jimenez
Surinder K. Chadha Jimenez
Georgia Bar No. 450033
suri@thechadhajimenezlawfirm.com

ATTACHMENT

ATTORNEYS FOR PLAINTIFF

Jeff Filipovits
Wingo F. Smith
Spears & Filipovits, LLC
315 W. Ponce de Leon Ave., Suite 865
Decatur, GA 30030
404-905-23225


Surinder K. Chadha Jimenez
The Chadha Jimenez Law Firm
4480 South Cobb Drive
Suite H 181
Smyrna, GA 30080
404-941-4039